# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**OCHSNER CLINIC FOUNDATION**                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 15-2313**

**LEXINGTON INSURANCE COMPANY**            **SECTION: "G"(2)**

## ORDER

In this litigation, Plaintiff Ochsner Clinic Foundation ("Ochsner") alleges that Defendant Lexington Insurance Company ("Lexington") breached its insurance policy by failing to pay additional amounts owed to Ochsner, and that Lexington acted in bad faith during the adjustment process.[1] Pending before the Court is Oschner's "Motion for Partial Summary Judgment on Lexington Insurance Company's Breach of La. R.S. § 22:41 and LA. R.S. § 22:1896."[2] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will deny the motion.

## I. Background

### A.    *Factual Background*

In this case, Ochsner alleges that Lexington sold a Certificate of Property Facultative Reinsurance ("certificate") to Ochsner for the term of May 31, 2011, through May 31, 2012.[3] The certificate made Lexington the reinsurer of Ochsner System Protection Company's ("OSPC") all-risks Commercial Property Policy ("insurance policy").[4] The insurance policy covered a former

---

[1] *See* Rec. Doc. 1-1; Rec. Doc. 11 at 2–3.

[2] Rec. Doc. 70.

[3] Rec. Doc. 1-1 at 2.

[4] *Id.*; Rec. Doc. 68-2 at 3.

1

warehouse located at 1401 Jefferson Highway that Ochsner was repurposing to serve as an expanded internal medicine practice.[5] On June 10, 2011, construction on the building began and was scheduled to be completed by June 2012.[6] On August 24, 2011, a portion of the building's roof collapsed during the renovation, causing property damage and delaying the clinic's opening.[7]

Afterwards, Ochsner made a claim under the insurance policy for indemnification of the losses it alleges to have suffered as a result of the roof collapse.[8] According to Ochsner, on September 23, 2011, Lexington informed Ochsner that it was taking "full control of the investigation, defense, adjustment, and settlement of any claim."[9] Ochsner states that by doing so, OSPC did not have any role in handling Ochsner's insurance claim, and that Lexington became, "for all practical and legal purposes, the direct insurer of Ochsner."[10]

Ochsner argues that the Lexington's subsequent tactics, disputes, and arguments regarding the insurance policy coverage unnecessarily delayed work on the collapsed building, increased the cost of the repurposing project, and caused Ochsner to suffer further business interruption losses.[11] Ochsner also contends that Lexington violated La. Rev. Stat. § 22:41 (Louisiana Policyholder Bill of Rights) and La. Rev. Stat. § 22:1896 (Right to Transparency and Integrity in Adjustment of Property Claims) by refusing to timely give Ochsner copies of requested documents used during

---

[5] Rec. Doc. 1-1 at 2; Rec. Doc. 70-2 at 2.

[6] Rec. Doc. 60-1 at 4.

[7] Rec. Doc. 1-1 at 2.

[8] *Id.*; Rec. Doc. 68-2 at 4; Rec. Doc. 60-1 at 5.

[9] Rec. Doc. 1-1 at 2. *See* Rec. Doc. 70-2 at 2–3.

[10] Rec. Doc. 1-1 at 3.

[11] *Id.* at 4.

2

Lexington's adjustment of Ochsner's claims.[12] Moreover, Ochsner asserts that Lexington's actions, such as allegedly prolonging the investigation, adjustment, and payment process, amount to bad-faith conduct in violation of La. Rev. Stat. § 22:1892 and La. Rev. Stat. § 22:1973.[13] Lexington, by contrast, asserts that it timely investigated, adjusted, and paid undisputed amounts of losses in Ochsner's claim as soon as Lexington learned of the claim.[14] Lexington contends that it consistently worked with Ochsner to resolve any disputes over the scope of coverage while continuing to make payments throughout the adjustment process.[15]

**B.    *Procedural Background***

On June 26, 2014, Ochsner filed a Petition for Damages in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[16] On June 25, 2015, Lexington removed the case to this Court after Ochsner voluntarily dismissed the only non-diverse defendant, OSPC, and the parties stipulated that Lexington is the proper defendant in this matter.[17] On August 30, 2016, Ochsner filed the instant motion.[18] On September 6, 2016, Lexington filed its opposition.[19] On September 27, 2016, Ochsner filed a reply.[20] On October 26, 2016, the Court held oral arguments

---

[12] *Id. See* Rec. Doc. 70-2 at 1.

[13] Rec. Doc. 1-1 at 4.

[14] *See* Rec. Doc. 60-1 at 5–7.

[15] *Id.* at 7–8.

[16] *Id.*

[17] Rec. Doc. 1 at 1–2.

[18] Rec. Doc. 70.

[19] Rec. Doc. 78.

[20] Rec. Docs. 124.

on all of the parties' motions for partial summary judgment.[21]

## II. Parties' Arguments

A.      *Ochsner's Arguments in Support of the Motion*

In its motion, Ochsner argues that this Court should grant partial summary judgment on the issue of Lexington's alleged breach of La. Rev. Stat. § 22:41 and La. Rev. Stat. § 22:1896.[22] Ochsner states that La. Rev. Stat. § 22:41 is the Policyholder Bill of Rights, and entitles an insured party to request and receive a broad category of loss adjustment documents.[23] Likewise, Ochsner represents that La. Rev. Stat. § 22:1896 is the Right to Transparency and Integrity in Adjustment of Property Claims, which requires insurers to respond to policyholder inquiries and requests within fourteen days.[24]

Ochsner argues that Lexington's conduct during the loss adjustment process breached these two statutes.[25] For example, Ochsner states that Lexington's engineering consultant, Madsen, Kneppers & Associates, Inc. ("MKA"), produced a report on October 14, 2011,[26] but that Lexington withheld this report for six weeks until after demolition began.[27] Subsequently, on December 21, 2011, Ochsner wrote a letter to Lexington specifically requesting that, "in accordance with La. R.S. § 22:41(14)," Lexington send Ochsner all reports issued by Lexington's

---

[21] Rec. Docs. 149, 150.

[22] Rec. Doc. 70-2.

[23] *Id.* at 6.

[24] *Id.*

[25] *Id.* at 5–8.

[26] *Id.* at 3–4.

[27] *Id.* at 4.

consultants.[28]

According to Ochsner, Lexington continued to fail or refuse to timely provide the requested documents within fourteen days and in violation of the two statutes, including claim handling guidelines, loss adjuster's reports, engineering analyses, and financial analysis by Lexington's adjuster HSNO, because it asserted that a "reinsurer" was not bound by La. Rev. Stat. § 22:41.[29] According to Ochsner, a reinsurance contract is legally an insurance contract, and thus Lexington is bound by La. Rev. Stat. § 22:41.[30] Here, Ochsner states that though Lexington is the "facultative reinsurer" of the insurance policy sold to Ochsner,[31] Lexington exercised its right to "step in *as the direct insurer* on the handling of the claim" and "take full control of the investigation, defense, adjustment and settlement of this claim . . . ."[32]

Ochsner states that while La. Rev. Stat. § 22:41 and La. Rev. Stat. § 22:1896 do not create independent causes of action, the violation of those statutes may be addressed through "bad faith" remedies and penalties under La. Rev. Stat. § 22:1892(B)(1) and § 22:1973(B)(5).[33] Here, Ochsner seeks summary judgment on the issue of Lexington's alleged violations of La. Rev. Stat. § 22:41 and La. Rev. Stat. § 22:1896 to use "as evidence" that Lexington acted in bad faith in the adjustment process.[34] Ochsner argues that the jury can consider that violation "when it determines

---

[28] *Id.*

[29] *Id.* at 5.

[30] *Id.* at 7.

[31] *Id.* at 7–8.

[32] *Id.* at 3, 7.

[33] *Id.* at 5 (citing *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299–300 (5th Cir. 2009)).

[34] *Id.* at 8–9.

whether Lexington's other failures were in bad faith."[35]

## B.    *Lexington's Opposition to Ochsner's Motion*

Lexington opposes Ochsner's motion on the ground that it is a procedurally improper request for declaratory relief, does not present a justiciable controversy, and is substantively meritless.[36] Lexington asserts that because neither statute creates an independent cause of action, Ochsner is really seeking declaratory judgment without ever pleading for declaratory relief.[37] Here, Lexington points out that Ochsner "quite candidly admits that it is not seeking judgment on any claim for relief in this litigation" as would be proper for summary judgment, but rather seeks to use the Court's declaration as "evidence" of bad faith violations.[38] Moreover, Lexington argues that Ochsner failed to cite any case law to support its argument that a violation of either statute, neither of which create a cause of action, are enforceable under the bad faith statutes.[39] Lexington asserts that La. Rev. Stat. § 22:41 states that it does not "create additional causes of actions or further penalties not otherwise provided under Louisiana statutes . . . ."[40] Moreover, Lexington represents that La. Rev. Stat. § 22:1896(C) only provides for enforcement when there are "violations of this Section that are committed or performed with such frequency as to indicate a general business practice."[41]

---

[35] *Id.* at 9.

[36] Rec. Doc. 78 at 2, 5.

[37] *Id.* at 8.

[38] *Id.* at 9.

[39] *Id.* at 8.

[40] *Id.* at 6.

[41] *Id.* at 7.

Furthermore, Lexington contends that that it has not violated La. Rev. Stat. § 22:41 or La. Rev. Stat. § 22:1986.[42] First, Lexington avers that Ochsner has not provided any case law that suggests these statutes apply to reinsurers.[43] Second, Lexington argues that it provided documents to Ochsner "consistent with the requirements—and exceptions—found in La. R.S. § 22:41(14)."[44] Lexington states that La. Rev. Stat. § 22:41(14) only provides a right to request certain documents and specifically excludes other confidential and privileged documents.[45]

Moreover, Lexington asserts that Ochsner failed to cite any actual examples of documents that were improperly withheld by Lexington.[46] For example, Lexington avers that the MKA report that Ochsner alleges Lexington withheld for six weeks was "plainly intended to be a confidential communication between a consultant and the adjuster, not a finalized 'report' or 'survey.'"[47] Lexington further argues that the MKA document was not a final report or survey, as it noted that MKA was still in the process of analyzing the claim, and that it was intended to be confidential.[48] Additionally, Lexington alleges that there is no requirement to produce claim handling guidelines under the statute as Ochsner argues.[49] Lexington also avers that Ochsner misquoted the deposition of Lexington's corporate representative, Iolanda Mestre-Gonzales, who said that Lexington does

---

[42] *Id.* at 11.

[43] *Id.* at 12.

[44] *Id.* at 4.

[45] *Id.* at 16–17.

[46] *Id.* at 13.

[47] *Id.* at 13–14.

[48] *Id.*

[49] *Id.* at 14.

not turn over their "work product" adjuster reports, which Lexington asserts is consistent with La. Rev. Stat. § 22:41(14), but that they do provide other required information.[50]

Finally, Lexington alleges that it timely responded on January 4, 2012, to Ochsner's demand for many documents on December 21, 2011, where it stated that it would only provide those documents that it was required to disclose under La. Rev. Stat. § 22:41(14); Lexington avers that "Ochsner may not have liked the response, but it timely received it."[51]

## C.   *Ochsner's Reply to Lexington's Opposition*

Ochsner asserts that summary judgment under Federal Rule of Civil Procedure 56(a) is proper on "*any part* of a claim or defense."[52]  Ochsner states that it alleged three times in its original complaint that Lexington improperly refused to provide its adjustment files, and tied that failure to Ochsner's requested relief under the bad faith statutes.[53]  Moreover, Ochsner contends that Rule 56(g) gives the Court the discretion to "enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."[54]  According to Ochsner, one of the facts underlying its claim of bad faith is that Lexington broke the law when it refused to turn over certain adjustment documents to Ochsner.[55] Ochsner contends that under Fifth Circuit and Louisiana Supreme Court precedent, evidence of

---

[50] *Id.* at 15.

[51] *Id.* at 4–5, 18.

[52] Rec. Doc. 124 at 2.

[53] *Id.*

[54] *Id.* at 3 (citing Fed. R. Civ. P. 56(g)).

[55] *Id.*

statutory violations can be used as evidence to support other claims of civil liability.[56]

Next, Ochsner states that nothing in the statutes' language limits their application to 'direct' insurers, and that a reinsurer is "*defined* as an 'insurer' because it provides a contract of 'insurance.'"[57] Ochsner avers that both statutes apply to the "insurer" and the "insurance company."[58] Additionally, Ochsner points out that Lexington acted as the direct insurer of Ochsner during this process.[59]

Furthermore, Ochsner contends that Lexington did violate the two statutes.[60] Ochsner argues that La. Rev. Stat. § 22:41(14) requires an insurer to provide certain documents and reports that "the insurance company prepared, had prepared, or used during its adjustment" unless they are "legally privileged" or "prepared in conjunction with a fraud investigation."[61] Ochsner asserts that none of the withheld documents were privileged, and that "most of the documents" were disclosed during discovery years later without any assertion of privilege, including Lexington's claims-handling guidelines, adjuster's reports, MKA's October 14, 2011 engineering report, HSNO's calculation, and the Merritt-Hawkins survey.[62] Ochsner avers that the adjuster's reports and HSNO's calculation were prepared in the ordinary course of business.[63] Ochsner states that

---

[56] *Id.* at 4.

[57] *Id.* at 5 (emphasis in original).

[58] *Id.*

[59] *Id.* at 6.

[60] *Id.*

[61] *Id.*

[62] *Id.* at 6–7.

[63] *Id.* at 7.

La. Rev. Stat. § 22:41 does not provide exclusions for "confidential" reports, surveys, or analysis.[64] Ochsner contends there was no fraud investigation here either.[65] Because these documents were not exempt, Ochsner argues that Lexington was required under Section 1896 to provide the information within fourteen days of the request but refused to do so.[66]

Here, Ochsner avers that it requested a copy of Lexington's "entire claims file" and future documents in connection with loss adjustment in December 2011.[67] Ochsner states that Lexington failed to provide those non-privileged documents, including engineering reports, claims guidelines, adjuster's reports, the Merritt-Hawkins survey, and HSNO's financial analysis of Ochsner's claim.[68] Moreover, Ochsner asserts that Lexington received the MKA's report on October 15, 2011, that Ochsner requested the report when it was completed on October 14, 2011, and that Ochsner did not receive that report until November 28, 2011.[69] Thus, Ochsner contends that it has proven that it requested the report and that Lexington failed to timely provide it, and thus Lexington has violated both statutes.[70]

### III. Law and Analysis

*A.*    *Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits

---

[64] *Id.*

[65] *Id.* at 7–8.

[66] *Id.* at 8.

[67] *Id.*

[68] *Id.*

[69] *Id.* at 8–9.

[70] *Id.* at 9.

show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[71] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[72] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[73] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[74] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[75]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[76] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[77] To withstand a motion for summary judgment, the nonmoving party must

---

[71] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[72] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[73] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[74] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[75] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[76] *Celotex*, 477 U.S. at 323.

[77] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

show that there is a genuine issue for trial by presenting evidence of specific facts.[78] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[79] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[80]

## B.    *Analysis*

In this motion, Ochsner argues that it is entitled to summary judgment on Lexington's alleged breaches of La. Rev. Stat. § 22:41 and La. Rev. Stat. § 22:1896.[81] The Court will address Ochsner's claims under each statute in turn.

### 1.    **Ochsner's claim under La. Rev. Stat. § 22:41(14)**

#### a.    ***Whether Ochsner's motion is a proper use of a motion for partial summary judgment***

As a preliminary matter, Lexington argues that Ochsner's motion is improper, as neither statute creates an independent cause of action.[82] Rather, Lexington contends that Ochsner is only seeking declaratory relief, a request that Ochsner never included in its pleadings, instead of

---

[78] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[79] *Little*, 37 F.3d at 1075.

[80] *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[81] Rec. Doc. 70.

[82] Rec. Doc. 78 at 6–8.

summary judgment on one of Ochsner's claims.[83]  In response, Ochsner asserts that La. Rev. Stat. § 22:41 specifically reserves to policyholders remedies "otherwise provided under Louisiana statutes," which Ochsner avers includes its bad faith claims under La. Rev. Stat. § 22:1973 and La. Rev. Stat. § 22:1892.[84]  Moreover, Ochsner argues that summary judgment is proper for "any part of a claim or defense;" here, Ochsner alleges that it "unambiguously" tied its requested relief under La. Rev. Stat. § 22:41 to its bad faith claims.[85]

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment by "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." In Ochsner's original complaint, Ochsner alleged that Lexington violated La. Rev. Stat. § 22:41 by refusing to provide Ochsner with copies of the documents it was entitled to receive under the statute.[86]  Likewise, Ochsner alleged that Lexington engaged in bad-faith conduct in violation of La. Rev. Stat. § 22:1892 and § 22:1973 by, *inter alia*, violating La. Rev. Stat. § 22:41.[87]  Moreover, La. Rev. Stat. § 22:41 specifically states that its provisions "do not create additional causes of actions or further penalties *not otherwise provided under Louisiana statutes*."[88]  Accordingly, the Court finds that Ochsner properly seeks partial summary judgment here on "part of" its bad faith claims, *i.e.* that Lexington violated La. Rev. Stat. § 22:41.[89]

---

[83] *Id.* at 7-10.

[84] Rec. Doc. 124 at 3–4.

[85] *Id.* at 2–3 (citing Fed. R. Civ. P. 56(a)).

[86] Rec. Doc. 1-1 at 4.

[87] *Id.* at 5. *See also id.* at 6 ("Ochsner is also entitled to damages and penalties owed for Lexington's bad-faith conduct in violation of La. R.S. § 22:1892, § 22:1973, and § 22:41.").

[88] La. Rev. Stat. § 22:41 (emphasis added).

[89] Fed. R. Civ. P. 56(a).

####### b.     *Whether genuine disputes of material fact exist to preclude summary judgment*

In its motion, Ochsner alleges that Lexington refused to provide "numerous important documents" related to the loss adjustment process despite Ochsner's request for them and in violation of La. Rev. Stat. § 22:41.[90] Ochsner states that in December 2011, it specifically requested, "in accordance with La. R.S. § 22:41(14)," that Lexington send Ochsner the reports issued by Lexington's consultants and "a copy of Lexington's entire claims file."[91] However, Ochsner contends that Lexington refused to hand over certain documents that Ochsner alleges it had a right to receive under La. Rev. Stat. § 22:41(14).[92] In particular, Ochsner avers that Lexington refused to timely provide Ochsner with the following documents: (1) MKA's October 14, 2011 report;[93] (2) Lexington's claims handling guidelines;[94] (3) the adjuster reports,[95] (4) HSNO's calculations;[96] and (5) the Merritt-Hawkins survey.[97] Ochsner argues that the only exceptions to La. Rev. Stat. § 22:41(14) that allow Lexington to withhold documents from Ochsner are when those documents are "legally privileged" or "prepared in conjunction with a fraud

---

[90] Rec. Doc. 70-2 at 1, 5.

[91] *Id.* at 4–5.

[92] *Id.*

[93] *See* Rec. Doc. 70-12 at 2 (email from an Ochsner representative, James Britsch, noting that Ochsner had "previously requested [the MKA report] and been waiting" for a month and half to receive it).

[94] *See* Rec. Doc. 70-10 (December 21, 2011 letter from Ochsner renewing its request for Lexington's claims adjustment guidelines).

[95] *See* Rec. Doc. 70-7 at 7–8 (deposition testimony of Lexington's corporate representative, who stated that Lexington does not turn over the "work product" adjuster reports).

[96] *See* Rec. Doc. 124 at 7.

[97] *See* Rec. Doc. 124-6 at 8–9 (Peter Fogarty of HSNO stating in his deposition that he looked at the Merritt Hawkins survey data but did not provide the information to Ochsner).

investigation;" Ochsner avers that neither exception applies here.[98]

In response, Lexington asserts that it abided by the statute and provided Ochsner with "all non-privileged final reports prepared by the consultants investigating this claim during the adjustment process."[99] Lexington argues that in its January 4, 2012 response to Ochsner's December 21, 2011 letter, Lexington informed Ochsner of its position that La. Rev. Stat. § 22:41(14) permits Lexington to keep any of the requested documents that were confidential or that do not fall within the enumerated list of documents that must be disclosed.[100] For example, Lexington avers that MKA's October 14, 2011 engineering report was actually a letter from MKA to Crawford & Company "memorializing" a previous teleconference call and further discussing the status of MKA's ongoing investigation into Ochsner's losses.[101]  In that letter, MKA states that it is "in the process of continuing to analyze and evaluate the site and documentation" and that the letter was "intended for the confidential use" of Crawford.[102]  Thus, Lexington argues that the letter was a confidential communication between a consultant and the adjuster, and not a final survey or report.[103]  Moreover, Lexington alleges that its claim handling guidelines are used for general training and guidance purposes not specific to any particular claim, and there is no requirement in the statute to produce "guidelines" or proprietary materials not specific to the claim at issue.[104] Lexington also states that it did provide the claim handling guidelines to Ochsner once a protective

---

[98] *Id.* at 6.

[99] Rec. Doc. 78 at 5.

[100] *Id.* (citing Rec. Doc. 70-14).

[101] *Id.* at 13 (citing Rec. Doc. 78-4).

[102] *Id. See* Rec. Doc. 78-4 at 3.

[103] Rec. Doc. 78 at 14.

[104] *Id.*

order was put in place.[105] Additionally, Lexington states that Ochsner's request for HSNO's "analysis and/or calculation" was directed at HSNO, not Lexington, and that no document could have been produced because HSNO was still in the process of reviewing the claim.[106] According to Lexington, once the report was completed, it was provided to Ochsner.[107] Lexington also contends that the adjuster reports were withheld as "work product" consistent with the statute.[108]

La. Rev. Stat. § 22:41 establishes certain rights for insured parties intended to "serve as standards for a policyholder bill of rights." In particular, La. Rev. Stat. § 22:41(14) provides:

> Relative to first party property damage claims, policyholders shall have the right to request and receive from the insurance company any estimates, bids, plans, measurements, drawings, engineer reports, contractor reports, statements or documents that are not legally privileged that the insurance company prepared, had prepared, or used during its adjustment of the policyholder's claim. A company may keep confidential adjuster notes, logs, and any documents prepared in conjunction with a fraud investigation.

La. Rev. Stat. § 22:41 also states that its provisions "do not create additional causes of actions or further penalties not otherwise provided under Louisiana statutes."

### i.    Exemptions under La. Rev. Stat. § 22:41(14)

First, the Court notes that both parties present differing interpretations of La. Rev. Stat. § 22:41(14). Ochsner argues that La. Rev. Stat. § 22:41(14) only exempts two categories of documents from disclosure to the policyholder: (1) documents that are legally privileged and (2) documents prepared in conjunction with a fraud investigation.[109] By contrast, Lexington asserts that "Ochsner does not discuss or consider that privileged documents and confidential adjuster

---

[105] *Id.*

[106] *Id.* at 15.

[107] *Id.*

[108] *Id.*

[109] Rec. Doc. 124 at 6.

notes and logs are not subject to production" under the statute either.[110] Neither party cites to any cases interpreting the provisions of La. Rev. Stat. § 22:41(14), and the Court has not identified any cases relevant to the disputed interpretation at issue here.

Where, as here, there appears to be an absence of a final decision by the Supreme Court of Louisiana on the issue at hand,[111] district courts are required to "employ the appropriate Louisiana civilian methodology to decide th[e] issue[s presented] the way that we believe the Supreme Court of Louisiana would decide [them]."[112] Under Louisiana's Civil Code, the only authoritative "sources of law are legislation and custom."[113] "Legislation is a solemn expression of legislative will."[114] As the Supreme Court of Louisiana has often noted, "the starting point in the interpretation of any statute is the language of the statute itself."[115] "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[116] However, "[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."[117]

---

[110] Rec. Doc. 78 at 12–13.

[111] *See* Rec. Doc. 78 at 2 ("Ochsner does not cite a single decision by any state or federal court in Louisiana that supports the relief it seeks."); Rec. Doc. 150 at 56 (Ochsner attorney stating that "[t]here are no cases out there that I have found either under 1896 or anything applicable under Section 22:41."). The Court has also not found any directly relevant case law which interprets the language and requirements of either statute.

[112] *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (citing *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)) (alterations in the original).

[113] La. Civ. Code art. 1; *See Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.,* 953 F.2d 985, 988 (5th Cir. 1992).

[114] La. Civ. Code art. 2.

[115] *Sullivan v. Wallace*, 2010-0388 (La. 11/30/10), 51 So. 3d 702, 706 (citing *Cats' Meow, Inc. v. City of New Orleans*, 98–0601, at 15 (La. 10/20/98), 720 So.2d 1186, 1198; *Smith v. Flournoy,* 238 La. 432, 115 So.2d 809, 814 (1959)).

[116] La. Civ. Code art. 9.

[117] La. Civ. Code art. 10.

17

Here, La. Rev. Stat. § 22:41(14) first provides that policyholders have the right "to request and receive" a wide range of documents "that are not legally privileged that the insurance company prepared, had prepared, or used during its adjustment of the policyholder's claim." Thus, as the plain language of the first part of the statute makes clear, an insurance company is not required to disclose those documents that are (1) legally privileged or (2) were not prepared or used during the adjustment of the policyholder's claim. La. Rev. Stat. § 22:41(14) further limits a policyholder's right to receive certain documents from insurance companies by stating that the insurance company may "keep confidential" three categories of documents: (1) adjuster notes, (2) logs, and (3) any documents prepared in conjunction with a fraud investigation.[118] Accordingly, to show that there are no genuine disputes of material fact here and that Lexington violated La. Rev. Stat. § 22:41(14) as a matter of law, Ochsner must show that it requested documents that it was entitled to receive, did not receive those documents from Lexington, and that those documents did not fall within an established exception to the statute.

### ii. Relationship between La. Rev. Stat. § 22:41(14) and La. Rev. Stat. § 22:1896

Moreover, the parties also dispute whether La. Rev. Stat. § 22:41(14)'s disclosure requirements should be read in conjunction with La. Rev. Stat. § 22:1896's requirement that

---

[118] The Court finds that its interpretation is the appropriate reading of the plain language of La. Rev. Stat. § 22:41(14), and most consistent with the purpose of the law. Moreover, to the extent that there is any ambiguity in the second part of the Section as to which word "confidential" modifies, *i.e.* whether the statute should be read as "keep confidential" or as ". . . *confidential adjuster notes*, logs, and any documents . . ." as Lexington suggests, the Court notes that the legislative history supports the Court's interpretation. *See Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So. 2d 184, 186 (holding that legislative history is a "helpful guide in ascertaining the intent of the legislature"). As originally proposed and prior to its enactment, the drafted legislation for La. Rev. Stat. § 22:41(14) only provided that "[a] company may *keep confidential* any documents they prepare in conjunction with a fraud investigation." *See* 2007 La. Senate Bill No. 205 (emphasis added). Prior to passage, an amendment to the bill was adopted to insert "adjuster notes, logs, and" in between "confidential" and "any documents," expanding the list of documents that could be exempt from disclosure to policyholders. *See* 2007 House Floor Amendment No. 4118 (433). Acknowledging this legislative history supports the interpretation that the word "confidential" should be read in total as "keep confidential" rather than "confidential adjuster notes."

insurance companies respond to policyholder inquiries within fourteen days.[119] According to Ochsner, the two statutes should be read together, such that Lexington was required to produce non-exempt documents within fourteen days of Ochsner's requests for the "entire claims file" and certain specific documents.[120] However, La. Rev. Stat. § 22:41(14) does not require disclosure of covered documents within a certain period of time after the request, and contains no reference to La. Rev. Stat. § 22:1896's independent requirement for Lexington to respond to an inquiry or request by a policyholder within fourteen days. While Ochsner suggests that the two statutes should be read together, such a reading would conflict with the plain language of the statutes and add additional rights and protections for policyholders that the legislature did not provide.

In particular, the Court notes that, although both statutes concern the rights of policyholders, they provide for significantly different protections: La. Rev. Stat. § 22:41(14) concerns what documents a policyholder has a right to receive from its insurance company, while La. Rev. Stat. § 22:1896 requires insurance companies *to respond* to all inquiries or requests within fourteen days. Additionally, Ochsner does not state what authority or statutory language would allow the Court to selectively import La. Rev. Stat. § 22:1896's timing requirements into only one of the seventeen rights established by La. Rev. Stat. § 22:41. As a federal court applying Louisiana law through its diversity jurisdiction, this Court must "avoid creating new rights and remedies in Louisiana state law where [the court] lack[s] express statutory authority or clear directive from the Louisiana Supreme Court."[121] Accordingly, the Court concludes that La. Rev. Stat. § 22:41(14) did not explicitly require Lexington to provide requested documents within fourteen days.

---

[119] *See* Rec. Doc. 150 at 55 (Ochsner stating at oral argument: "I think the better argument is they need to be read together."); *Id.* at 49 (Lexington stating at oral argument that the two statutes are independent of one another and that Ochsner is conflating the two "to effectively create a third statute.").

[120] *See* Rec. Doc. 150 at 55.

[121] *In re Whitaker Const. Co. Inc.,* 411 F.3d 197, 209 n. 4 (5th Cir. 2005) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938)); *Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, 48 F. Supp. 3d 916, 941 (E.D. La. 2014) (Brown, J.).

Turning to the parties' substantive arguments regarding whether Lexington violated La. Rev. Stat. § 22:41, Ochsner contends that it requested a copy of Lexington's "entire claims file" in connection with loss adjustment, including any reports issued by Lexington's consultants and Lexington's claim handling guidelines, but that Lexington delayed in producing some documents and failed to produce others.[122] The Court will consider each document in turn.

### iii.    MKA's October 2011 report

First, Ochsner avers that it did not receive MKA's October 2011 report for six weeks, but concedes that "Ochsner ultimately received the survey."[123] Here, the parties each present competing evidence over whether MKA's October 2011 report was within the scope of La. Rev. Stat. § 22:41(14)'s disclosure requirements. Lexington presents evidence that the document was simply an internal letter memorializing a teleconference call regarding Ochsner's claim prior to any finalized report or analysis, and plausibly outside the scope of La. Rev. Stat. § 22:41(14)'s disclosure requirements,[124] while Ochsner asserts that it was a document in the enumerated list of covered materials which Lexington was required to provide to Ochsner.[125] Lexington has also provided evidence that the MKA report was allegedly still not finished or in Lexington's possession as late as November 3, 2011.[126] Additionally, as stated above, Ochsner concedes that

---

[122] Rec. Doc. 70-2 at 4–5; Rec. Doc. 124 at 8.

[123] Rec. Doc. 70-2 at 4.

[124] *See* Rec. Doc. 78 at 13–14; Rec. Doc. 78-4 at 1, 3 (October 13, 2011 letter from Kevin McCoy at MKA to Joel Fisher at Crawford, stating that the letter was "to memorialize some of the items we discussed" during a teleconference call, but that MKA was still "in the process of continuing to analyze and evaluate the site and documentation.")

[125] Rec. Doc. 70-2 at 4–5.

[126] *See* Rec. Doc. 78 at 14 ("In fact, as Ochsner is aware but did not divulge to this Court, the claim notes actually indicate that on November 3, 2011, Lexington claims examiner Bill Lamond inquired about the status of the expected MKA survey report, and Fisher (Crawford) replied that the MKA report was still being compiled." (citing Rec. Doc. 78-5)).

it *did* receive the final report weeks later.[127] Thus, the parties' competing evidence of the nature, content, and purpose of the document demonstrates that there are genuine disputes of material fact as to whether the document should have been provided to Ochsner under La. Rev. Stat. § 22:41(14). Moreover, even assuming that MKA's October 2011 report was within the scope of La. Rev. Stat. § 22:41(14)'s production requirements, Ochsner has not shown that, as a matter of law, an alleged month and a half delay is a violation of Ochsner's right to "receive" such documents under La. Rev. Stat. § 22:41(14) and entitles Ochsner to summary judgment.

### iv.    *Claim handling guidelines*

Next, Ochsner avers that, despite repeated requests, Lexington failed to provide Ochsner with a copy of Lexington's claim handling guidelines.[128] However, Ochsner has not provided sufficient evidence to prove that there are no genuine disputes of material fact over whether Lexington "prepared, had prepared, or used [the claims handling guidelines] during its adjustment of the policyholder's claim" as required by La. Rev. Stat. § 22:41(14).[129] In particular, Ochsner has not pointed to sufficient evidence that proves, as a matter of law, that *Lexington* used those guidelines while adjusting *Ochsner's claim* in a manner contemplated by the language of the statute, rather than for training, general guidance, or another purpose as Lexington suggests.[130] At oral argument, Ochsner did point to a provision in the All-Risks insurance policy that requires a third party designated assigned adjuster to comply with the guidelines.[131] However, the document provided to the Court states that the designated adjuster to whom the provision requiring

---

[127] Rec. Doc. 70-2 at 4.

[128] Rec. Doc. 124 at 6–8.

[129] La. Rev. Stat. § 22:41(14).

[130] *See* Rec. Doc. 78 at 14 ("Ochsner cites no support for the assertion that claim handling guidelines created and maintained for general training and guidance purposes—and not specific to any particular claim—are subject to the production requirements articulated in La. R.S. § 22:41(14).").

[131] *See* Rec. Doc. 150 at 45.

compliance with the claim handling guidelines would apply was "Not Yet Assigned."[132] Moreover, Ochsner has not demonstrated that the provision in the All-Risks insurance policy actually applied to the adjusters involved in this case or if they, in fact, used the standards in adjusting Ochsner's claim; more fundamentally, Ochsner has not demonstrated that the alleged use of such documents *by third party adjusters* would trigger *Lexington*'s production obligations under La. Rev. Stat. § 22:41(14).[133] Accordingly, the Court cannot find, from the mere fact that the insurance policy contemplated that an unnamed designated adjuster would comply with the guidelines, that as a matter of law, the guidelines were used by Lexington to adjust Ochsner's claim such that Lexington would be required to disclose the guidelines under La. Rev. Stat. § 22:41(14). Additionally, Ochsner has not pointed to any legislative authority or case law that suggests the language of La. Rev. Stat. § 22:41(14) should be stretched to include an insurance company's internal documents and guidelines that were not directly "used" by the insurance company itself during the adjustment of a policyholder's claim. Because the statute's plain

---

[132]   Rec. Doc. 70-3 at 26–27.

[133]   For the first time at oral argument, Ochsner asserted that "Exhibit C" shows that James Fisher, a Crawford & Company employee, stated in a deposition that he used the guidelines. *See* Rec. Doc. 150 at 45. However, Exhibit "C" to the motion is the deposition of James Paul Britsch who does not discuss the claims handling guidelines. *See* Rec. Doc. 70-5. Additionally, Exhibit "C" to Ochsner's reply appears to be an unrelated document that was referred to during the deposition of Anderson Baker. *See* Rec. Doc. 124-3. Moreover, it does not appear that either of Ochsner's memoranda mention James Fisher's deposition testimony or what he testified to, or provide any citation to the appropriate record document. Rec. Docs. 70, 124. Additionally, the Court notes that even if Ochsner properly presented evidence that a Crawford employee did state that he used the claim handling guidelines, Ochsner has not demonstrated that *Lexington*, as the "insurance company" subject to the disclosure requirements, "used" the document such that Ochsner was entitled to receive it. *See* La. Rev. Stat. § 22:41(14) ("policyholders shall have the right to request and receive from the insurance company . . . documents that are not legally privileged that *the insurance company* prepared, had prepared, or used during *its adjustment of the policyholder's claim.*"(emphasis added)). Ochsner has also not pointed to any authority that a bad faith claim can be premised on an insurance company's failure to provide a policyholder with documents that a third party adjuster or consultant may have used, rather than the insurance company itself, under La. Rev. Stat. § 22:41(14). Without pointing to evidence that Lexington itself used the claim adjusting guidelines for Ochsner's claim or that a Crawford employee's actions can trigger Lexington's disclosure requirements under La. Rev. Stat. § 22:41(14), the Court cannot find that there are no genuine disputes of material fact regarding whether Lexington violated the statute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that the movant bears the burden of demonstrating that summary judgment is appropriate); *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010) (noting that the movant bears the burden to establish all the essential elements required on a claim to warrant summary judgment in the movant's favor).

22

language clearly limits disclosure to those documents directly prepared or used for the policyholder's claim, and not internal documents in the insurance company's possession generally, and Ochsner has not provided evidence that Lexington used those guidelines here, a genuine dispute of material fact exists for the claim handling guidelines as well.

***v.   Adjuster Reports***

Next, Ochsner avers that Lexington was required to provide Ochsner with a series of adjuster reports, but failed to do so.[134] Lexington points to evidence that the adjuster reports at issue were protected work product and fall within an exception to La. Rev. Stat. § 22:41(14)'s disclosure requirements, while other related materials, such as the adjuster's conclusions and other materials, were properly provided to Ochsner.[135] By contrast, Ochsner asserts that these documents were turned over during discovery and were created during the ordinary course of business.[136] However, Ochsner has not provided the Court with the actual adjuster reports to examine or other sufficient evidence to show that the documents were not privileged as Lexington asserts. Moreover, Ochsner has not presented specific evidence to demonstrate that these adjuster reports are separate from the "adjuster notes" that La. Rev. Stat. § 22:41(14) allows insurance companies to keep confidential.[137] Accordingly, Ochsner has not presented sufficient evidence to show that there are no genuine disputes of material fact regarding whether Lexington should have turned over the adjuster reports under La. Rev. Stat. § 22:41(14).

---

[134] Rec. Doc. 124 at 6–8.

[135] Rec. Doc. 78 at 15–16; Rec. Doc. 78-2 (deposition of Lexington's corporate representative, Iolanda Mestre-Gonzalez, who stated that the adjuster reports are work product, while its adjusters' conclusions and other materials were provided to Ochsner).

[136] Rec. Doc. 124 at 6–7; Rec. Doc. 124-8 (deposition of Kevin Perrier, who stated that the adjuster reports were prepared in the ordinary course of business).

[137] *See* La. Rev. Stat. § 22:41(14) ("A company may keep confidential adjuster notes, logs, and any documents prepared in conjunction with a fraud investigation."); *See* Rec. Doc. 78 at 16 (Lexington pointing out that in Ochsner's motion, Ochsner "actually goes out of the way [to] exclude the relevant exception for 'confidential adjuster's notes' found in the statute when it quotes the statutory language to this Court.").

23

### vi.     HSNO's calculations

Next, with regards to Ochsner's HSNO's calculations claim, Lexington points to evidence that HSNO's calculations were not the type of documents that could be turn over, and asserts that the information *was* turned over once HSNO's report once completed.[138] Ochsner, meanwhile, has not demonstrated that what it requested and what it received were different, or that there are no genuine disputes of material fact as to whether the HSNO's calculations were in a form that should have been disclosed under the statute.

### vii.     Merritt-Hawkins survey

Finally, genuine disputes of material fact exist regarding whether Lexington was required to turn over the Merritt-Hawkins survey. While Ochsner asserts that HSNO's representative, Peter Fogarty, said he had "no reason" to not turn over the Merritt-Hawkins survey in a deposition,[139] the parties present conflicting evidence with regards to whether and when *Lexington* used the Merritt-Hawkins survey while adjusting Ochsner's claim.[140] In fact, in another of Ochsner's motion for partial summary judgment, it represented that "when HSNO received the [Merritt-Hawkins] survey in April 2014, *it ignored the data* and the survey's findings and failed to timely issue payment."[141]

Accordingly, the Court finds that while Ochsner asserts that Lexington "refused to provide

---

[138] Rec. Doc. 78 at 14–15.

[139] Rec. Doc. 124 at 7; Rec. Doc. 124-6 at 9.

[140] *See* Rec. Doc. 150 at 33–34 (Lexington attorney stating at oral arguments that "we did not rely upon, ever – HSNO did not rely upon it and Lexington never relied upon and never believed that the Merritt-Hawkins survey told us there was an actual loss there"); Rec. Doc. 124-6 at 98–100 (Peter Fogarty, of HSNO, stating that he "wasn't sure" if he performed any deeper analysis of the Merritt-Hawkins survey between April 4, 2014, and July 25, 2014, and that HSNO had "referred to the Merritt-Hawkins information in the report of June 20, 2016," but not stating whether or how the Merritt-Hawkins survey was *used by Lexington*).

[141] Rec. Doc. 68-2 at 17–18 (emphasis added). Ochsner likewise alleged in that motion that Lexington waited "years" after receiving the Merritt-Hawkins survey to make any business loss payments in June 2016, further raising a genuine issue of material fact as to whether and when Lexington used the information in a manner that would subject the survey to disclosure requirements under La Rev. Stat. § 22:41(14).

many documents" it alleges it was entitled to under La. Rev. Stat. § 22:41(14),[142] Ochsner has not demonstrated that there are no genuine disputes of material facts and that Ochsner is entitled to summary judgment as a matter of law on any documents it alleges it did not receive from Lexington in violation of the statute.[143]  To withstand this motion for summary judgment, Lexington was only required to show that there is a genuine issue for trial by presenting evidence of specific facts that it did not violate La. Rev. Stat. § 22:41(14);[144]  Lexington has done so here.

Accordingly, the Court finds that Lexington has pointed to sufficient evidence supporting its assertion that it did not violate La. Rev. Stat. § 22:41(14) to defeat summary judgment. Ochsner has not demonstrated that there are no material facts in dispute requiring a finding that Lexington failed to provide Ochsner with those documents that Ochsner was entitled to receive under the statute.[145]  Therefore, the Court denies Ochsner's instant motion for partial summary judgment on La. Rev. Stat. § 22:41(14).[146]

### 2.      Ochsner's claim under La. Rev. Stat. § 22:1896

Second, Ochsner alleges that Lexington violated La. Rev. Stat. § 22:1896 by failing to properly respond to Ochsner's requests for documents within fourteen days as required by the statute.[147]  La. Rev. Stat. § 22:1896(A) states that an insurer "shall respond to all inquiries or requests from the insured within fourteen days of the inquiry or request." La. Rev. Stat. § 22:1896(C) goes on to note that "[a]ny violations of this Section that are committed or performed

---

[142] Rec. Doc. 70-2 at 1.

[143] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[144] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[145] La. Rev. Stat. § 22:41(14).

[146] Rec. Doc. 70.

[147] *See* Rec. Doc. 70-2 at 1; Rec. Doc. 124 at 8.

with such frequency as to indicate a general business practice . . . shall be subject to the provisions of [La. Rev. Stat. §] 22:1964 et seq., the Unfair Trade Practices Act."

As a preliminary matter, Lexington argues that Ochsner's motion for partial summary judgment on its claim under La. Rev. Stat. § 22:1896 is improper, because "[n]o allegations are brought concerning La. R.S. § 22:1986" in either Ochsner's original or amended complaints.[148] In response, Ochsner asserts that summary judgment is proper for "any part of a claim or defense;" here, Ochsner also alleges that it "unambiguously" tied its requested relief under La. Rev. Stat. § 22:1896 to its bad faith claims.[149] However, Ochsner did not point to any allegation in its complaint concerning La. Rev. Stat. § 22:1986.

As stated *supra*, under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment by "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." However, while Ochsner did allege that Lexington violated La. Rev. Stat. § 22:41 in its complaint,[150] neither Ochsner's original complaint nor its amended complaint allege a violation of La. Rev. Stat. § 22:1896.[151] Moreover, Ochsner does not include any alleged violations of La. Rev. Stat. § 22:1896 as part of its bad faith claims under La. Rev. Stat. § 22:1892 and La. Rev. Stat. § 22:1973.[152] Thus, Ochsner has not "identif[ied] each claim or defense — or the part of each claim or defense — on which summary judgment is sought."[153] In other words, Ochsner has not demonstrated that a violation of La. Rev. Stat. § 22:1896 would establish, as a matter of law, any part of its bad faith claims or shown that there

---

[148] *See* Rec. Doc. 78 at 8 & n.14.

[149] Rec. Doc. 124 at 2–3 (citing Fed. R. Civ. P. 56(a)).

[150] Rec. Doc. 1-1 at 4–5 ("Lexington also violated the Policyholder Bill of Rights.").

[151] *See* Rec. Docs. 1-1, 35.

[152] Rec. Doc. 1-1 at 5.

[153] Fed. R. Civ. P. 56(a).

are no genuine disputes of material facts with regards to part of its bad faith claims. For example, Ochsner avers that summary judgment here would be used "as evidence demonstrating Lexington's pattern of adversarial conduct, and to support Ochsner's contention that Lexington's refusals to timely pay legitimate claims was a knowing violation of" the bad faith statutes.[154] However, the Court notes that while evidence that Lexington failed to timely respond to certain requests within fourteen days may indeed support the bad faith allegations pled by Ochsner, Ochsner has not shown that a violation of La. Rev. Stat. § 22:1896 establishes, as a matter of law, that Lexington engaged in a "pattern of adversarial conduct" or refused "to timely pay legitimate claims" requested by Ochsner. In other words, Ochsner's motion for partial summary judgment on La. Rev. Stat. § 22:1896 fails because Ochsner has never asserted a claim under La. Rev. Stat. § 22:1896 or asserted a violation of La. Rev. Stat. § 22:1896 as "part of" its bad faith claims on which summary judgment would be appropriate.[155]

The Court finds Ochsner's motion analogous to the motion for summary judgment that was denied in *Martin v. Fid. Nat. Title Ins. Co.*[156] There, another section of the Eastern District of Louisiana pointed out that, "[r]ather then setting out why they are entitled to judgment as a matter of law on any claim or defense, [the] plaintiffs simply set out a number of facts and ask the Court to rule on them."[157] The court, citing Fifth Circuit precedent, noted that summary judgment "is simply another form of *judgment as a matter of law*[.]"[158] "Plaintiffs ask the Court to find facts that may be useful to them in their RICO action, but such findings would not be appropriate on

---

[154] Rec. Doc. 70-2 at 8.

[155] Fed. R. Civ. P. 56(a).

[156] No. 09-4195, 2011 WL 2144425, at *3 (E.D. La. May 31, 2011) (Vance, J.).

[157] *Id.*

[158] *Id.* (citing *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1423 n.11 (5th Cir. 1996)).

summary judgment in this case."[159] Similarly, Ochsner has not identified which part of its bad faith claims on which it seeks partial summary judgment. Moreover, by failing to point to the part of its bad faith claims that it alleges summary judgment would be appropriate, the Court finds that Ochsner has not pointed to sufficient evidence demonstrating that there are no genuine disputes of material fact on any part of its claims. Therefore, the Court also denies Ochsner's instant motion for partial summary judgment on its allegations under La. Rev. Stat. § 22:1896.[160]

## IV. Conclusion

Based on the foregoing, the Court concludes that there are genuine disputes of material fact precluding summary judgment regarding Ochsner's claims under La. Rev. Stat. § 22:41(14). The Court also concludes that summary judgment should be denied on Ochsner's claims under La. Rev. Stat. § 22:1896, as Ochsner has not identified any portion of its original or amended complaints that allege a violation of La. Rev. Stat. § 22:1896 on which it seeks summary judgment. Moreover, Ochsner has not demonstrated that there are no genuine disputes of material fact regarding any part of its bad faith claims on which an order granting summary judgment on La. Rev. Stat. § 22:1896 would be appropriate.[161] Accordingly,

---

[159] *Id.*

[160] Because the Court finds that there are genuine factual disputes regarding whether Lexington violated La. Rev. Stat. § 22:41(14) and La. Rev. Stat. § 22:1896, the Court will not address Lexington's other arguments that Ochsner is improperly seeking declaratory relief and that the statutes do not apply to a reinsurer.

[161] Rec. Doc. 1-1 at 5.

IT IS HEREBY ORDERED that Oschner's "Motion for Partial Summary Judgment on Lexington Insurance Company's Breach of La. R.S. § 22:41 and LA. R.S. § 22:1896"[162] is DENIED.

NEW ORLEANS, LOUISIANA, this __2nd__ day of December, 2016.

NANNETTE JOLIVETTE BROWN
UNITED STATES DISTRICT JUDGE

---

[162] *Id.*